IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALI S. MUHAMMAD,
        Plaintiff,

v.

TIM O'BRIEN, CEO of Select Portfolio
Servicing, Inc., *et al*.,
        Defendants.

: CIVIL ACTION NO.
: 1:20-CV-4802-MLB-JSA
:
:
:
:
:
: **NON-FINAL REPORT AND**
: **RECOMMENDATION ON A**
: **MOTION TO DISMISS**

Plaintiff Ali S. Muhammad, proceeding *pro se*, originally filed this action in the State Court of Fulton County on or about October 13, 2020, against Defendants Tim O'Brien, CEO of Select Portfolio Servicing, Inc.; Select Portfolio Servicing, Inc. ("SPS"); JPMorgan Chase Bank, USA ("Chase"); and Deutsche Bank.[1] *See* Compl. [1-2]. Plaintiff alleges that Defendants breached a settlement agreement with him related to two prior court actions he filed against them. On or about November 2, 2020, Plaintiff filed an Amended Complaint [2]. On November 25, 2020, Defendant SPS removed the action to this Court, with the consent of Chase and Deutsche Bank,

---

[1] Defendant "Deutsche Bank" states that it has been incorrectly named in the Complaint, and that its correct name is Deutsche Bank National Trust Company, as Trustee, in trust for the registered Holders of Long Beach Mortgage Loan Trust 2005-WL3, Asset-Backed Certificates, Series 2005-WL 3. *See* Notice of Removal [1] at ¶ 1.

the other Defendants who had been served with the Complaint at the time of removal.[2] *See* Notice of Removal [1] at ¶ 3, Ex. A [1-1].

The action is now before the Court on the Motion to Dismiss Plaintiff's Complaint and Amended Complaint [4] filed by Chase and the Motion to Dismiss Plaintiff's Amended Complaint [8] filed by SPS, Deutsche Bank, and O'Brien (collectively the "Motions to Dismiss"). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motions to Dismiss [4][8] be **GRANTED**, and that Plaintiff's claims against Chase, SPS, and Deutsche Bank be **DISMISSED** for failure to state a claim, although with leave to replead within thirty (30) days. The undersigned **RECOMMENDS** that Plaintiff's claims against O'Brien be **DISMISSED** without prejudice under Rule 4(m) based on Plaintiff's failure to serve him with the summons and Complaint within 90 days of filing the Complaint.

## I.     BACKGROUND

This is at least the fifth case the Plaintiff has filed in this Court, or has had removed to this Court, arising out of various disputes with Chase and other entities related to property located at 1560 Ravens Run, Jonesboro, Georgia 30226 (the "Property"). On January 13, 2015, Plaintiff filed a lawsuit against Chase, SPS, and

---

[2] Defendant O'Brien claims that Plaintiff has failed to serve him with the Complaint or Amended Complaint. *See* Defs. Br. [8-1] at 19-20.

other Defendants arising out of disputes over the Property, the mortgage loan, and Security Deed related to the Property. *See Muhammad v. Dimon, et al.*, Civil Action No. 1:15-CV-0107-AT-ECS, N.D. Ga. ("*Muhammad I*"). Judge Totenberg dismissed Plaintiff's Complaint in that case for failure to state a claim on July 30, 2015. On December 29, 2015, Plaintiff filed a second federal action, this time asserting claims against Chase, SPS, Deutsche Bank, and other Defendants. *See Muhammad v. JPMorgan Chase Bank, USA, et al.*, Civil Action No. 1:15-CV-4479-AT-WEJ, N.D. Ga. ("*Muhammad II*"). On June 20, 2016, Judge Totenberg dismissed Plaintiff's claims in *Muhammad II.*

On October 31, 2017, Plaintiff filed a third lawsuit against Chase, Deutsche Bank, SPS, and other Defendants. *See Muhammad v. Deutsche Bank Nat'l Tr. Co. et al.*, No. 1:17-CV-4330-MLB-JSA, N.D. Ga. ("the 2017 Action"). Judge Brown dismissed Plaintiff's claims in that case on September 6, 2018. On December 20, 2018, Plaintiff filed another case against Chase, Deutsche Bank, SPS, and other Defendants, which was removed to this Court on January 24, 2019. *See Muhammad v. JP Morgan Chase Bank, USA, et al.*, No. 1:19-CV-0417-MLB-JSA, N.D. Ga. ("the 2019 Action").[3] After the undersigned recommended that the District

---

[3] The Court refers to Plaintiff's third and fourth cases in this Court as "the 2017 Action" and the "the 2019 Action" as that is how Plaintiff refers to those actions in his Complaint and Amended Complaint. *See* Amend. Compl. [2] at ¶ 2.

Judge dismiss all claims in that case, Plaintiff voluntarily dismissed the 2019 Action on July 19, 2019.

Over a year later, on October 13, 2020, Plaintiff filed a "Verified Complaint for Enforcement of Confidential Settlement Agreement and Release; for Declaratory Judgment; for Damages for Breach of Agreement; and for Refund of All Monies Paid and Other Relief" [1-2] ("Complaint") in the State Court of Fulton County initiating this action against Chase, SPS, Deutsche Bank, and O'Brien. On or about November 2, 2020, Plaintiff filed an "Amended Verified Complaint for Enforcement of Confidential Settlement Agreement and Release; for Declaratory Judgment; for Damages for Breach of Agreement; and for Refund of All Monies Paid and for Violation of the FDCPA and FCRA" [2] ("Amended Complaint"). The following facts are taken from Plaintiff's Amended Complaint and, unless otherwise noted, are assumed to be true for the purpose of resolving the pending motions.

Plaintiff alleges that, on or about July 2, 2019, he and Chase entered into a "Confidential Settlement Agreement and Release," "to completely resolve and release two pending court actions, referred to as the 2017 Action and the 2019 Action." Amend. Compl. [2] at ¶ 2, Ex. A [2-1] ("Settlement Agreement").[4] The

---

[4] Although Plaintiff alleges that he and Chase entered into the Settlement Agreement, the version of the Settlement Agreement Plaintiff attached as Exhibit A

Settlement Agreement states that Plaintiff shall file a "Notice of Dismissal *with Prejudice*" in the 2019 Action, that he will withdraw his motion for reconsideration in the 2017 action, and that he agrees that he will not file any additional motions for reconsideration and/or appeals of either the 2017 Action or the 2019 Action. Settlement Agreement at ¶¶ 3.1-3.3 (emphasis in original). Further, the parties agree that, within thirty days of Plaintiff's dismissal with prejudice of the 2019 Action and the withdrawal of his motion for reconsideration in the 2017 action, Chase will pay $2500 to Plaintiff. *Id.* at ¶ 3.4. Plaintiff also agrees to a complete release of any and all claims against Chase, any affiliated individual or entity, or any loan investor or servicer that has any interest in the Property, Loan, or Security Deed, arising out of the Loan, the Property, the Security Deed, the Released Claims, or any other claims or defenses that he could have raised in the 2017 Action, the 2019 Action, or any other action brought by Plaintiff against Chase. *Id.* at ¶ 4.

Plaintiff further alleges that Defendant SPS is the "servicer for the mortgage loan in this matter," and that Defendant Deutsche Bank "is the owner and holder of the mortgage note in question or is the investor in that mortgage." *Id.* at ¶ 4. He alleges that, subsequent to entering the Settlement Agreement with Chase, he sent a

---

to his Amended Complaint is signed only by Plaintiff, not by Chase. *See* Amend. Compl., Ex. A [2-1] at 7.

"Demand letter to Defendant O'Brien advising that: Defendant Select Portfolio Servicing had Cancelled $270,705.21 in debt against Plaintiff's account pursuant to a Cancellation of Debt Notice dated 06/27/2019." *Id*. at ¶ 7.[5]  Plaintiff alleges that he informed O'Brien that his "account should have a zero balance based upon the amount of debt cancelled, which was greater than the mortgage loan balance and exceeded the value of the property in question," and that he demanded "a refund of all amounts paid in 2019." *Id*.[6]  He contends that, despite the "Demand letter notice," SPS "continued to breach the Agreement and their own Debt Cancellation documents by continuing to send statements demanding payment of $9,367.82." *Id*. at ¶ 8.

Plaintiff has asserted six counts in the Amended Complaint. In Count I, "Enforcement of Agreement," Plaintiff alleges that O'Brien and Chase violated the Settlement Agreement by "continuing to collect a mortgage debt that they were not entitled to collect based upon both their Agreement and the Cancellation of Debt

---

[5]  While Plaintiff states that the alleged "Cancellation of Debt Notice" is attached as "Exhibit B," the Amended Complaint includes no Exhibit B. *See* Amend. Compl. [2]. Plaintiff's original Complaint, however, included a copy of a "Cancellation of Debt" notice. *See* Compl., Ex. B [1-2] ("Cancellation of Debt Form 1099-C," which states that the creditor's name is "Select Portfolio Servicing, Inc.").

[6]  While Plaintiff states that the letter sent to O'Brien is attached as "Exhibit D," the Amended Complaint includes no Exhibit D. *See* Amend. Compl. [2]. Plaintiff's original Complaint, however, included a copy of a letter to O'Brien from Plaintiff's counsel dated September 28, 2020. *See* Compl., Ex. D [1-2].

documents," "refusing to reduce Plaintiff's account to zero balance," "refusing to record a Satisfaction of Mortgage Debt," and "refusing to refund monies paid by Plaintiff in 2019 after the mortgage debt had been cancelled." *Id*. at ¶ 10. Plaintiff requests that the Court "enforce the Agreement of the parties in accordance with the Settlement Agreement, require SPS Inc. to reduce Plaintiff's mortgage loan account to zero balance, require Defendant to record a Satisfaction of Mortgage and Cancellation of Security Deed against the subject property in the Public Records of the County where the property is located, and grant such other and further relief as the Court deems equitable, appropriate and just." *Id*.

In Count II, for "Money Damages for Breach of Contract," Plaintiff alleges the O'Brien, SPS, and Chase "breached not only this Settlement Agreement herein but also violated the letter and spirit of the parties good faith and intentions." *Id*. at ¶ 12. Plaintiff "demands Judgment against Defendants for actual, compensatory, statutory, consequential and exemplary damages for Defendants lack of good faith in breaching this Settlement Agreement and the letter and spirit of Plaintiff's Exhibits A through E." *Id*. at ¶ 13.

In Count III, for "Declaratory Relief," Plaintiff alleges that "Declaratory Relief is appropriate under the facts and circumstances of this Complaint," and that he "has no other adequate remedy at law." *Id*. at ¶¶ 15, 17. He requests that the Court

"issue a Final Judgment and Declaration that: the Mortgage Debt as evidenced by the Mortgage Documents and Cancellation of debt documents has been Cancelled and Discharged." *Id*. at ¶ 19.

In Count IV, for "Refund of All Monies Paid," Plaintiff states that his "Mortgage Loan Debt on the subject property was Cancelled pursuant to the Cancellation of Debt Form 1099-C," and he "is entitled to a refund of all payments made after the debt was cancelled on June 27, 2019." *Id*. at ¶¶ 21-23.

In Count V, for "Violation of the FDCPA," Plaintiff alleges that O'Brien and SPS "are continuing to collect amounts already written off and charged off as a tax write off." *Id*. at ¶ 27. Plaintiff alleges that "Defendants are still reporting the Cancelled Debt on Plaintiff's Credit Reports, they continue to seek to collect a debt which has already been cancelled and is not owed, in violation of the FDCPA (Fair Debt Collection Practices Act)." *Id*. at ¶ 28. Plaintiff also alleges that the "stated Balance on Defendant SPS's Statement continues to include the Cancelled portion of the Debt, which is false and misleading and a violation of the Act." *Id*.

In Count VI, for "Violation of the FCRA," Plaintiff alleges that O'Brien and SPS "continue their wrongful acts of false reporting of Cancelled Debt on Plaintiff's Credit Report, in violation of the FCRA (Fair Credit Reporting Act), which false and misleading reporting is prohibited by the FCRA." *Id*. at ¶ 31. He alleges that "[e]ach

and every act of falsely reporting on Plaintiff's Credit Report is a separate violation of the Act," and he "demands statutory damages for each and every instance of Defendants false reporting of the Cancelled Debt on Plaintiff's Credit Reports from the date the debt was cancelled forward." *Id*. at ¶ 32.

After this case was removed to this Court, Chase filed a Motion to Dismiss [4] on December 1, 2020, and O'Brien, SPS, and Deutsche Bank (collectively the "SPS Defendants") filed a Motion to Dismiss [8] on December 2, 2020. On December 21, 2020, Plaintiff filed a response [12] to Chase's Motion to Dismiss and a response [13] to the SPS Defendants' Motion to Dismiss, and on December 29, 2020, Chase filed a reply [14] and the SPS Defendants filed a reply [15].

Thereafter, on January 12, 2021, Plaintiff filed a "Response to Defendant Chase Bank, N.A.'s and Defendant Deutsche Bank, SPS and Tim O'Brien's Reply Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint" [17] ("Sur-Reply"). The Local Rules of this Court do not permit parties to file sur-reply briefs as a matter of course. *See* LR 7.1, NDGa. Because Plaintiff failed to request permission from the Court to file a sur-reply brief, the Court has not considered Plaintiff's Sur-Reply in resolving the pending motions.

As noted, Chase filed its Motion to Dismiss [4] on December 1, 2020, and the SPS Defendants filed a Motion to Dismiss [8] on December 2, 2020. Under the Local

Rules, Plaintiff's response to Chase's Motion to Dismiss was due on December 18, 2020. *See* LR 7.1(B), NDGa; Fed. R. Civ. P. 6(d). Plaintiff did not file his response, however, until December 21, 2020, one business day after the deadline.[7] Chase argues in its reply that the Court should not consider Plaintiff's response, because, even though he is *pro se*, he has filed numerous lawsuits in this Court "and should be well acquainted with the Federal Rules of Civil Procedure and this Court's local Rules." Chase Reply [14] at 3. The Court agrees with Chase that Plaintiff's response was untimely filed. In consideration of his *pro se* status, however, in in the interests of justice, and because his response was filed only one business day after the deadline, the Court has considered Plaintiff's response [12] as if it were timely filed.

## II.   DISCUSSION

### A.   *Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the

---

[7] In Plaintiff's Sur-Reply, he argues that he had 21 days to file a response, and it was "not due until December 21, 2020, the day it was filed with the Clerk." Pl. Sur-Reply [17] at 2. The Local Rules, however, provide that a response to a motion must be filed within 14 days of service of the motion, not 21. *See* LR 7.1(B), NDGa. Thus, even including the three additional days for service by mail, Plaintiff's response was due on December 18, 2020. *See* Fed. R. Civ. P. 6(d).

grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff, however, may not merely plead facts in a complaint sufficient to find a claim to relief is conceivable; instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Defendants have moved to dismiss the Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief

survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). A court may not, however, rewrite inadequate pleadings—including those filed by *pro se* plaintiffs—to plead essential allegations. *See Pontier v. City of Clearwater, Fla.*, 881 F. Supp. 1565, 1568 (M.D. Fla. 1995). Moreover, although a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted

factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

The Court is also generally required to provide a *pro se* litigant an opportunity to replead a deficient complaint before dismissal, unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) (explaining that a district court should give a *pro se* plaintiff an opportunity to amend a complaint if such amendment would not be futile).[8]

As noted above, a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a plaintiff has referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the

---

[8] *Wagner* overruled *Bank* as to counseled litigants, but specifically stated that it did not address *pro se* litigants. *See Wagner*, 314 F.3d at 542 n.1. Thus, the *Bank* rule remains applicable to *pro se* litigants when the Court is determining whether to dismiss a *pro se* complaint with prejudice. *See Duff v. Steub*, 378 F. App'x 868, 872 n.5 (11th Cir. 2010).

pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

In this case, Plaintiff has attached various documents to his Complaint, including the Settlement Agreement. *See* Comp., Ex. A-E. Because Plaintiff has attached those documents to the Complaint, they may be considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to

be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P.,

reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."

(citation omitted));[9] *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th

Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits

thereto, it is well settled that the exhibits control.").

In addition, when a court is considering a motion to dismiss under Rule

12(b)(6), documents attached to the motion to dismiss may be considered if the

document is both central to the plaintiff's claim and its contents are undisputed.

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d

1272, 1276 (11th Cir. 2005); *see also Chesnut v. Ethan Allen Retail, Inc.*, 971

F. Supp.2d 1223, 1228-29 (N.D.Ga. 2013) (considering EEOC document without

converting motion to dismiss to motion for summary judgment, stating "a document

central to the complaint that the defense appends to its motion to dismiss is also

properly considered, provided that its contents are not in dispute"). "'Undisputed'

means that the authenticity of the document is not challenged." *Day*, 400 F.3d at

1276.

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

In this case, the SPS Defendants have attached certain documents as exhibits to their Motion to Dismiss that they contend are both referenced in Plaintiff's Complaint or Amended Complaint and central to Plaintiff's claims. *See* Defs. Br. [8-1], Ex. A-E [8-2]-[8-6]. In particular, Exhibit A is the Security Deed executed by Plaintiff in August of 2005 when he purchased the Property and obtained a mortgage loan from Long Beach Mortgage Company ("Long Beach"). *See* Defs. Ex. A [8-2] ("Security Deed"). Exhibit B is an Assignment of the Security Deed to Deutsche Bank. *See* Defs. Ex. B [8-3] ("Assignment"). Exhibit D is the IRS Instructions for Forms 1099-A and 1099-C, which are referenced in Plaintiff's Complaint. *See* Defs. Ex. D [8-5] ("IRS Instructions"). Finally, Exhibit E is a Loan Modification Agreement signed by Plaintiff on June 24, 2019, which is referenced in the Form 1099-C referred to in the Complaint. *See* Defs. Ex. E [8-6] ("Loan Modification Agreement").

In Plaintiff's response brief, he argues generally that the Court may not consider matters outside the pleadings, but he has not specifically disputed the authenticity of any of the exhibits submitted by the SPS Defendants. *See* Pl. Resp. [13] at 2-3. Furthermore, it appears that all of these documents submitted by the SPS Defendants are referenced in Plaintiff's Complaint, Amended Complaint, or exhibits, and are central to his claims. Accordingly, the Court may consider these

documents as part of the pleadings in this case and may consider them in resolving the SPS Defendants' Motion to Dismiss without converting it to a motion for summary judgment. *Horsley*, 304 at 1134; *see also Day*, 400 F.3d at 1276 ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*.").

Moreover, the Court may also take judicial notice of the records in Plaintiff's prior actions in resolving the Defendants' Motions to Dismiss. *See Horne v. Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010) (*per curiam*) (noting that a district court may take judicial notice of public records that are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.") (*citing* Fed. R. Evid. 201(b))); *Tuscano v. Evening Journal Assoc.*, 179 F. App'x 621, 623 n.3 (11th Cir. 2006); *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *see also Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) ("a district court may take judicial notice of matters of public record without converting a Rule 12(b) motion into a Rule 56 motion."); *Brown v. CitiMortgage, Inc.*, No.

1:15-CV-4143-CC-AJB, 2016 WL 9450410, at *1 n.1 (N.D. Ga. May 25, 2016) (district court may take judicial notice of public records such as documents in a plaintiff's prior case, without needing to convert motion to dismiss into motion for summary judgment), *report and recommendation adopted*, 2016 WL 9450409 (N.D. Ga. Jun. 23, 2016).

  B.  *Plaintiff's Claims against Chase*

  1.  Breach of Contract

As noted above, Plaintiff has asserted six counts in the Amended Complaint. Construing Plaintiff's allegations liberally, three of those counts appear to be based on an alleged breach of contract. In Count I, "Enforcement of Agreement," Plaintiff alleges that O'Brien and Chase violated the Settlement Agreement by "continuing to collect a mortgage debt that they were not entitled to collect based upon both their Agreement and the Cancellation of Debt documents," "refusing to reduce Plaintiff's account to zero balance," "refusing to record a Satisfaction of Mortgage Debt," and "refusing to refund monies paid by Plaintiff in 2019 after the mortgage debt had been cancelled." Am. Compl. at ¶ 10. Plaintiff requests that the Court "enforce the Agreement of the parties in accordance with the Settlement Agreement, require SPS Inc. to reduce Plaintiff's mortgage loan account to zero balance, require Defendant to record a Satisfaction of Mortgage and Cancellation of Security Deed against the

subject property in the Public Records of the County where the property is located, and grant such other and further relief as the Court deems equitable, appropriate and just." *Id*.

In Count II, for "Money Damages for Breach of Contract," Plaintiff alleges the O'Brien, SPS, and Chase "breached not only this Settlement Agreement herein but also violated the letter and spirit of the parties good faith and intentions." *Id*. at ¶ 12. Plaintiff "demands Judgment against Defendants for actual, compensatory, statutory, consequential and exemplary damages for Defendants lack of good faith in breaching this Settlement Agreement and the letter and spirit of Plaintiff's Exhibits A through E." *Id*. at ¶ 13. Further, in Count IV, for "Refund of All Monies Paid," Plaintiff states that his "Mortgage Loan Debt on the subject property was Cancelled pursuant to the Cancellation of Debt Form 1099-C," and he "is entitled to a refund of all payments made after the debt was cancelled on June 27, 2019." *Id*. at ¶¶ 21-23.

Under Georgia law, the essential elements of a breach-of-contract claim are: (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom. *See Odem v. Pace Academy*, 510 S.E.2d 326, 331-32 (Ga. Ct. App. 1998); *Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996); *see also TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc.*, 880

F.Supp. 1572, 1583 (N.D. Ga. 1995) (Evans, J.). Thus, to bring a breach of contract claim under Georgia law, a plaintiff must first establish the existence of a valid and enforceable contract. *Broughton v. Johnson*, 545 S.E.2d 370, 371 (Ga. Ct. App. 2001). Furthermore, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." *See* O.C.G.A. § 13-3-1. Thus, a plaintiff has the burden of pleading and proving the existence of a valid contract by showing all of these elements. *Eastview Healthcare, LLC v. Synertx, Inc.*, 674 S.E.2d 641, 646 (Ga. Ct. App. 2009).

A plaintiff asserting a claim of breach of contract must also allege and identify a specific term or provision of the contact that the defendant violated. *See American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369-70 (N.D. Ga. 2006) ("Because American Casual cannot point to any contractual provision that Moe's breached by failing to act in the manner set forth above, American Casual cannot state a claim for breach of contract based on these allegations.") (citing *Adkins v. Cagle Foods JV, LLC*, 441 F.3d 1320, 1327 (11th Cir. 2005)). Once the existence of a contract is established, a plaintiff may recover damages for breach of contract only if he demonstrates: (1) plaintiff's performance of the contract; (2) defendant's breach of the contract; and (3) that the breach caused

the plaintiff harm. *Jones v. Central Builders Supply Co.*, 121 S.E.2d 633, 638 (Ga. 1961) (citations omitted).

In this case, Plaintiff's conclusory allegations supporting his claim of breach of contract against Chase fail as a matter of law because he has failed to identify any particular term or provision that Chase allegedly violated. Although Plaintiff alleges that Chase violated the Settlement Agreement, he fails to allege any provision that Chase violated. As discussed, the Settlement Agreement provided that Chase would pay Plaintiff $2500 in exchange for his dismissal of the 2019 Action, his withdrawal of his motion for reconsideration of the 2017 Action, and his general release of any claims arising out of the Loan, the Property, or the Security Deed, against Chase, any related entity, or any loan investor or servicer that has any interest in the Property, Loan, or Security Deed. *See* Settlement Agreement [2-1]. But Plaintiff fails to allege in the Amended Complaint that Chase ever failed to pay him $2500, nor does he explain how Chase violated any other term of the Settlement Agreement.

Moreover, in Count I, "Enforcement of Agreement," Plaintiff alleges that Chase and O'Brien violated the Settlement Agreement by "continuing to collect a mortgage debt that they were not entitled to collect based upon both their Agreement and the Cancellation of Debt documents," "refusing to reduce Plaintiff's account to zero balance," "refusing to record a Satisfaction of Mortgage Debt," and "refusing

to refund monies paid by Plaintiff in 2019 after the mortgage debt had been cancelled." Am. Compl. at ¶ 10. But Plaintiff fails to show how any of these terms were included in the Settlement Agreement, and a review of the Settlement Agreement reveals that it does not include any term or provision suggesting that Chase agreed to cancel any debt.

Moreover, Plaintiff alleges in Count IV, for "Refund of All Monies Paid," that his "Mortgage Loan Debt on the subject property was Cancelled pursuant to the Cancellation of Debt Form 1099-C," and he "is entitled to a refund of all payments made after the debt was cancelled on June 27, 2019." *Id.* at ¶¶ 21-23. But Plaintiff fails to allege that he ever made any payments to Chase at any time, let alone at any time after June 27, 2019. Nor does he even allege that he had any contract or agreement with Chase that involved any cancellation of any debt. To the extent that Plaintiff has relied on the Cancellation of Debt Form 1099-C to show the existence of a contract to cancel debt, that document does not indicate that Chase was a party to any agreement to cancel any debt, and the form states on its face that the creditor's name is "Select Portfolio Servicing, Inc." *See* Compl., Ex. B [1-2].

As discussed, when the exhibits attached to the pleadings contradict the facts alleged in the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). Thus, although Plaintiff repeatedly makes the

conclusory allegation that Chase violated the Settlement Agreement, the plain language of the Settlement Agreement required Chase only to pay $2500 to Plaintiff, and Plaintiff never alleges in the Amended Complaint that Chase failed to do so. For that reason, Plaintiff has failed to state a claim against Chase for breach of contract under any of the various legal theories asserted in Counts I, II, or IV.

Accordingly, the undersigned **RECOMMENDS** that Chase's Motion to Dismiss [4] be **GRANTED** with respect to Plaintiff's claims of "enforcement of agreement," "money damages for breach of contract," and "refund of all monies paid," and that Counts I, II, and IV of the Amended Complaint, as asserted against Chase, be **DISMISSED** for failure to state a claim.[10]

### 2.    Fair Debt Collection Practices Act

In Count V of the Amended Complaint, Plaintiff asserts a claim for "Violation of the FDCPA." Amend. Compl. [2] at ¶¶ 26-29. Plaintiff alleges that O'Brien and SPS "are continuing to collect amounts already written off and charged off as a tax write off." *Id.* at ¶ 27. Plaintiff alleges that "Defendants are still reporting the Cancelled Debt on Plaintiff's Credit Reports, they continue to seek to collect a debt

---

[10] Although Plaintiff has already filed an Amended Complaint, he did so prior to receiving the Motions to Dismiss. Because Plaintiff has not yet been expressly afforded an opportunity to amend or replead to attempt the cure the deficiencies identified here, the Court recommends dismissal with leave to replead within (30) days. *See* discussion, *infra*.

which has already been cancelled and is not owed, in violation of the FDCPA (Fair Debt Collection Practices Act)." *Id.* at ¶ 28. Plaintiff also alleges that the "stated Balance on Defendant SPS's Statement continues to include the Cancelled portion of the Debt, which is false and misleading and a violation of the Act." *Id.*

The Court construes Plaintiff's claim in Count V as a claim for a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* It appears that Plaintiff has asserted this claim against only O'Brien and SPS, as he does not allege any facts suggesting that Chase violated the FDCPA. Nevertheless, because Plaintiff refers to "Defendants" without specifically stating that he has brought this claim solely against O'Brien and SPS, the Court will discuss Plaintiff's purported FDCPA claim against Chase.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e; *see also Frazier v. Absolute Collection Serv., Inc.*, 767 F.Supp.2d 1354, 1363 (N.D.Ga. 2011) ("The FDCPA seeks to remedy abusive, deceptive, and unfair debt collection practices by debt collectors against consumers."). Specifically, the FDCPA "prohibits unfair or unconscionable collection methods, conduct which

harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." *Acosta v. Campbell*, 309 F. App'x 315, 319 (11th Cir. 2009) (citing 15 U.S.C. §§ 1692d, 1692e, 1692f); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

"To prevail on a FDCPA claim, a plaintiff must establish that: (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Frazier*, 767 F.Supp.2d at 1363 (internal quotation marks and citations omitted). It is well-established that the FDCPA applies only to "debt collectors" and not to creditors or servicers. *See* 15 U.S.C. § 1692a(6); *see also Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (M.D. Fla. April 9, 2012) (the "critical element is whether the defendant is a debt collector" as defined under the statute).

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that

a third party is collecting or attempting to collect such debts. For the purpose of section 1692f(6) . . . , such term also includes any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6).

The statute also excludes from the definition of "debt collector" altogether any person who acquires a debt before it is in default. *See* 15 U.S.C. § 1692a(6)(F). This exclusion "has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default." *Stroman v. Bank of America Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012). A plaintiff's ability to properly classify a defendant as a debt collector is critical because the "FDCPA applies only to 'debt collectors' whose conduct involves the collection a debt." *Evans v. Appalachian Mountain Serv., Inc.*, No. CV611-037, 2011 WL 3739552, at *2 (S.D. Ga. Aug. 24, 2011) (internal citation omitted).

Thus, in order to state a plausible claim that a particular entity is a debt collector under the FDCPA, a plaintiff must allege sufficient facts to establish that the entity meets the definition under the statute. In other words, Plaintiff must allege a sufficient factual basis to allow a reasonable inference that the principal purpose of Chase's business is the collection of debts, or that it regularly collects or attempts

to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *See Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1317-18 (11th Cir. 2015) ("The amended complaint . . . fails to provide any basis from which we could plausibly infer that the 'principal purpose' of Capital One's business is debt collection. . . . The amended complaint makes no factual allegations from which we could plausibly infer that Capital One regularly collects or attempts to collect debts owed or due to someone other than Capital One.").

In this case, Plaintiff fails to allege in the Amended Complaint that Chase is a debt collector as that term is defined by the FDCPA, nor does he allege any facts indicating that Chase was acting as a debt collector under the FDCPA for the purpose of attempting to collect Plaintiff's alleged debts at issue in this case. Furthermore, even assuming that Plaintiff had properly alleged that Chase was a debt collector, he has failed to allege any facts indicating that Chase violated the FDCPA in any way. Indeed, Plaintiff fails to allege that Chase took any actions against him for the purpose of allegedly collecting on a debt. Accordingly, Plaintiff has failed to state a plausible claim against Chase for a violation of the FDCPA. *See Cyrus v. Wells Fargo Bank, N.A.*, No. 1:12-CV-01156-TWT-LTW, 2013 WL 869398, at *4 (N.D. Ga. Feb. 7, 2013) (Walker, M.J.) ("Reciting the statutory definition without offering any facts in support is insufficient to plausibly allege that Defendants meet the

definition of debt collectors, such that the FDCPA applies to them."), *report and recommendation adopted*, 2013 WL 870075 (N.D. Ga. Mar. 7, 2013) (Thrash, J.); *see also Mills v. JP Morgan Chase Bank*, No. 1:11–CV–3709–JEC–LTW, 2012 WL 4086508, at *9 (N.D.Ga. July 23, 2012) (Walker, M.J.) (the complaint was subject to dismissal because, among other things, "[p]laintiffs fail to allege any specific facts indicating that [the defendant] regularly attempts to collect debts, that the principal purpose of its business is the collection of debts, or that the principal purpose of its business is the enforcement of security interests"), *report and recommendation adopted*, 2012 WL 4075634 (N.D.Ga. Aug 14, 2012) (Carnes, J.); *Correa v. BAC Home Loans Servicing LP*, No. 6–11–cv–1197–Orl–22DAB, 2012 WL 1176701, at *12 (M.D. Fla. Apr. 9, 2012) (because the plaintiff cited only the general definition of a "debt collector" and stated that defendants are debt collectors in a conclusory manner, the plaintiff failed to allege facts sufficient to state a claim for relief under the FDCPA).

Accordingly, the undersigned **RECOMMENDS** that Chase's Motion to Dismiss [4] be **GRANTED** with respect to Plaintiff's FDCPA claim, and that Count V of the Amended Complaint, as asserted against Chase, be **DISMISSED** for failure to state a claim.

3.      Fair Credit Reporting Act

In Count VI of the Amended Complaint, Plaintiff asserts a claim for "Violation of the FCRA." Amend. Compl. at ¶¶ 30-32. Plaintiff alleges that O'Brien and SPS "continue their wrongful acts of false reporting of Cancelled Debt on Plaintiff's Credit Report, in violation of the FCRA (Fair Credit Reporting Act), which false and misleading reporting is prohibited by the FCRA." *Id*. at ¶ 31. He alleges that "[e]ach and every act of falsely reporting on Plaintiff's Credit Report is a separate violation of the Act," and he "demands statutory damages for each and every instance of Defendants false reporting of the Cancelled Debt on Plaintiff's Credit Reports from the date the debt was cancelled forward." *Id*. at ¶ 32.

The Court construes Plaintiff's claim in Count VI as a claim for a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* As with Plaintiff's claim under the FDCPA, it appears that Plaintiff has asserted this claim against only O'Brien and SPS, as he does not allege any facts suggesting that Chase violated the FCRA. Nevertheless, because Plaintiff refers to "Defendants" without specifically stating that he has brought this claim solely against O'Brien and SPS, the Court will discuss Plaintiff's purported FCRA claim against Chase.

"Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy . . . [and] seeks to accomplish these

goals by requiring credit reporting agencies to [among other procedures] limit the furnishing of [credit reports] to certain statutorily enumerated purposes." *TRW Inc. v. Andrews*, 534 U.S. 18, 23 (2001) (internal citations and quotations omitted).

Plaintiff alleges generally that the Defendants engaged in "wrongful acts of false reporting of Cancelled Debt on Plaintiff's Credit Report, in violation of the FCRA (Fair Credit Reporting Act), which false and misleading reporting is prohibited by the FCRA." Amend. Compl. at ¶ 31. Thus, Plaintiff does not allege that Chase was a credit reporting agency, but instead he alleges that it furnished "false and misleading" information on his credit report. Under the FCRA, however, a furnisher of credit information is only liable to a consumer in limited circumstances.

Section 1681s-2(a)(1)(A) prohibits any person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). This section cannot, however, be enforced in private lawsuits brought by consumers, and rather may only be addressed in enforcement actions by the appropriate regulatory agencies. *See Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009).

Section 1681s–2(b) of the FCRA requires furnishers to investigate and respond promptly to notice of a dispute regarding the completeness or accuracy of information provided to a consumer reporting agency. 15 U.S.C. § 1681s-2(b). This provision of the FRCA may be enforced through a private right of action, but only if the furnisher received notice of the dispute through a consumer reporting agency and failed to investigate the dispute. *See Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008) ("The FCRA does provide a private right of action for a violation of § 1681s–2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency."). Once a furnisher receives notice of such a dispute from a consumer reporting agency, the furnisher is required to:

> (1) conduct an investigation with respect to the disputed information;
>
> (2) review all of the relevant information provided in the notice from the consumer reporting agency;
>
> (3) report the results of its investigation to the consumer reporting agency;
>
> (4) if the investigation reveals incomplete or inaccurate information, report those findings to the other major consumer reporting agencies to which it provided the incomplete or inaccurate information; and
>
> (5) modify, delete, or permanently block the reporting of any information disputed by a consumer that it finds to be inaccurate or incomplete or that cannot be verified after reinvestigation.

15 U.S.C. § 1681s-2(b)(1); *see also Horton v. HSBC Bank*, No. 1:11-CV-3210-TWT, 2013 WL 2452273, at **6–7 (N.D. Ga. Jun. 5, 2013) (Thrash, J.).

In this case, Plaintiff does not allege in the Amended Complaint that he disputed any information to any credit reporting agency, that such agency forwarded the dispute to Chase, or that Chase thereafter failed to reasonably investigate the dispute and continued to report "false and misleading" information on Plaintiff's credit report. Thus, Plaintiff has failed to state a claim under the FCRA against Chase.

Accordingly, the undersigned **RECOMMENDS** that Chase's Motion to Dismiss [4] be **GRANTED** with respect to Plaintiff's FCRA claim, and that Count VI of the Amended Complaint, as asserted against Chase, be **DISMISSED** for failure to state a claim.

4.    Declaratory Judgment

In Count III of the Amended Complaint, Plaintiff asserts a claim for "Declaratory Relief." Amend. Compl. at ¶¶ 14-19. Plaintiff alleges that "Declaratory Relief is appropriate under the facts and circumstances of this Complaint," and that he "has no other adequate remedy at law." *Id*. at ¶¶ 15, 17. He requests that the Court "issue a Final Judgment and Declaration that: the Mortgage Debt as evidenced by the Mortgage Documents and Cancellation of debt documents has been Cancelled and Discharged." *Id*. at ¶ 19.

Under Georgia law, declaratory relief may be issued only in cases of actual controversy. *See* O.C.G.A. § 9-4-2. Federal law similarly requires that there be an "actual controversy" for a declaratory judgment to be issued. *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). In this case, as discussed, Plaintiff has failed to show that there he has an "actual controversy" with Chase that would entitle him to declaratory relief. Plaintiff has not alleged any facts indicating that Chase violated the Settlement Agreement, or that it made any agreement with him to cancel any debt, or that it continues to attempt to collect a debt that has been allegedly cancelled. Thus, because Plaintiff's breach of contract claims fail as a matter of law, then his request for declaratory relief must also fail.

Accordingly, the undersigned **RECOMMENDS** that Chase's Motion to Dismiss [4] be **GRANTED** with respect to Plaintiff's claim for "declaratory relief," and that Count III of the Amended Complaint, as asserted against Chase, be **DISMISSED** for failure to state a claim.

C.     *Plaintiff's Claims against SPS*

1.     Breach of Contract

As discussed, Plaintiff's claims in Counts I, II, and IV of the Amended Complaint all appear to be based on an alleged breach of contract. In Count I, "Enforcement of Agreement," Plaintiff alleges that O'Brien and Chase violated the

Settlement Agreement by "continuing to collect a mortgage debt that they were not entitled to collect based upon both their Agreement and the Cancellation of Debt documents," "refusing to reduce Plaintiff's account to zero balance," "refusing to record a Satisfaction of Mortgage Debt," and "refusing to refund monies paid by Plaintiff in 2019 after the mortgage debt had been cancelled." Am. Compl. at ¶ 10. Plaintiff requests that the Court "enforce the Agreement of the parties in accordance with the Settlement Agreement, require SPS Inc. to reduce Plaintiff's mortgage loan account to zero balance, require Defendant to record a Satisfaction of Mortgage and Cancellation of Security Deed against the subject property in the Public Records of the County where the property is located, and grant such other and further relief as the Court deems equitable, appropriate and just." *Id*.

In Count II, for "Money Damages for Breach of Contract," Plaintiff alleges the O'Brien, SPS, and Chase "breached not only this Settlement Agreement herein but also violated the letter and spirit of the parties good faith and intentions." *Id*. at ¶ 12. Further, in Count IV, for "Refund of All Monies Paid," Plaintiff states that his "Mortgage Loan Debt on the subject property was Cancelled pursuant to the Cancellation of Debt Form 1099-C," and he "is entitled to a refund of all payments made after the debt was cancelled on June 27, 2019." *Id*. at ¶¶ 21-23.

To the extent that Plaintiff is attempting to base his breach of contract claim against SPS on the Settlement Agreement, that claim fails because the Settlement Agreement indicates on its face that it was an agreement between Plaintiff and Chase. Plaintiff alleges no facts in the Amended Complaint that would support any plausible claim that SPS was a party to the Settlement Agreement, or that it was bound by its terms. Moreover, Plaintiff does not allege any facts suggesting that SPS violated the Settlement Agreement in any way, even if it had been a party.

Plaintiff alleges in Count IV, for "Refund of All Monies Paid," that his "Mortgage Loan Debt on the subject property was Cancelled pursuant to the Cancellation of Debt Form 1099-C," and he "is entitled to a refund of all payments made after the debt was cancelled on June 27, 2019." *Id.* at ¶¶ 21-23. Thus, Plaintiff's claim of breach of contract against SPS appears to be based on this Cancellation of Debt Form 1099-C. *See* Compl., Ex. B. But as shown by the Loan Modification Agreement submitted by SPS, SPS did not agree to cancel Plaintiff's entire mortgage debt, and thus, Plaintiff has failed to state a plausible claim that SPS violated that agreement.

As noted above, Plaintiff's Amended Complaint refers to the Cancellation of Debt Form 1099-C and claims that this IRS form indicates that SPS agreed to cancel his debt, and Plaintiff attached this form to his original Complaint as an exhibit. *See*

Amend. Compl. at ¶ 7; Compl., Ex. B. The SPS Defendants have also attached, as Exhibit D, the IRS Instructions for Forms 1099-A and 1099-C, and, as Exhibit E, a Loan Modification Agreement signed by Plaintiff on June 24, 2019, which is referenced in the Form 1099-C referred to in the Complaint. *See* Defs. Ex. D [8-5], Ex. E [8-6]. The IRS Instructions state that Code "F" in Box 6 of the Form 1099-C references such an agreement with the creditor, so, as SPS argues, because Form 1099-C references this agreement, the Loan Modification Agreement is central to Plaintiff's claims and may be considered by the Court. *See* Def. Ex. D, E.

The SPS Defendants argue that, as demonstrated by the exhibits, the Cancellation of Debt Form 1099-C is not a contract between SPS and Plaintiff, but instead is "a by-product of a contract entered into by SPS on behalf of Deutsche Bank—the Loan Modification Agreement—that provided for forgiveness of certain specified amounts of the Loan under certain circumstances." Defs. Br. [8-1] at 12. As explained in the Loan Modification Agreement, SPS informed Plaintiff that it would be sending a Form 1099-C to the IRS and to Plaintiff. *See* Loan Modification Agreement [8-6] at 3 ("SPS will notify the Internal Revenue Service of the amount of principal forgiven on IRS Form 1099-C, copies of which will be provided to you by January 31st of the year following the loan modification.").

36

Thus, SPS contends, that it is precisely what it did—it provided Plaintiff with a copy of the Form 1099-C by January 31, 2020 following his execution of the Loan Modification Agreement in June 2019. But, SPS argues, the Form 1099-C is not the "contract" that contains terms regarding forgiveness of any portion of the Loan, because it is the Loan Modification Agreement that is the contract between SPS and Plaintiff that governs the terms of his loan modification. For that reason, SPS argues that the Form 1099-C itself does not impose any obligations on SPS or Deutsche Bank, and Plaintiff cannot state a claim for breach of contract against SPS based on the information contained in Form 1099-C.

Moreover, SPS argues, the terms of the Loan Modification Agreement itself indicate that Plaintiff's claim of breach of contract must fail because the Agreement contradicts Plaintiff's allegations in the Amended Complaint. Plaintiff alleges that his Loan balance should be zero because the Form 1099-C indicates that the amount of debt cancelled by the SPS Defendants is "greater than the mortgage loan balance." Amend. Compl. at ¶ 7. But contrary to Plaintiff's allegation, the Loan Modification Agreement states that the mortgage loan balance is $473,205.21. *See* Loan Modification Agreement [8-6] at 1 ("The new principal balance of the Note will be $473,205.21.").

Further, SPS contends, the Loan Modification Agreement states that $270,705.21 of the "New Principal Balance" is only "eligible for forgiveness" under certain specific conditions detailed in the Loan Modification Agreement, not that it has been forgiven already. *See id.* at ¶ 2.c. Specifically, the Loan Modification Agreement expressly states that certain amounts of the Loan balance will be forgiven but only if "Borrower is not in default on any new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of June 1, 2019." *Id.* Further, even assuming that Plaintiff had met that condition, SPS is only required to forgive $90,235.07 on each of those first, second and third anniversaries. *Id.*

Significantly, SPS argues, Plaintiff does not allege in the Amended Complaint that he has satisfied any of those required conditions in the Loan Modification Agreement in order to obtain forgiveness of any portion of the loan. To the contrary, SPS argues, the monthly statements Plaintiff attached as Exhibits E and F to the original Complaint demonstrate that Plaintiff is in default on more than three full monthly payments. *See* Compl., Ex. E, F. Thus, SPS argues, Plaintiff has failed to show that SPS violated the Loan Modification Agreement, nor has he shown that he is entitled to a cancellation of the Loan or Security Deed. For that reason, SPS argues, Plaintiff's claims for breach of contract, specific performance, refund of

monies paid, and declaratory judgment should be dismissed to the extent they are premised on the Cancellation of Debt Form 1099-C.

In Plaintiff's response, he argues that the Court may not consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment. *See* Pl. Resp. [13] at 1-3. But while Plaintiff argues generally that the Court may not consider matters outside the pleadings, he has not specifically disputed the authenticity of any of the exhibits submitted by the SPS Defendants. *See id*. at 2-3. In particular, Plaintiff has not disputed the authenticity of the Loan Modification Agreement that he signed on June 24, 2019, which states that SPS will forgive a certain portion of his mortgage debt but only under certain specific conditions. *See* Defs. Ex. E [8-6]. Because Plaintiff's breach of contract claim against SPS appears to be based on this Loan Modification Agreement, the Court finds that the Agreement is central to Plaintiff's claims and may be considered without converting the Motion to Dismiss into a motion for summary judgment. *See* discussion, *supra*.

As discussed above, to bring a breach of contract claim under Georgia law, a plaintiff must first establish the existence of a valid and enforceable contract. *Broughton v. Johnson*, 545 S.E.2d 370, 371 (Ga. Ct. App. 2001). Furthermore, "[t]o constitute a valid contract, there must be parties able to contract, a consideration

moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." *See* O.C.G.A. § 13-3-1. Thus, a plaintiff has the burden of pleading and proving the existence of a valid contract by showing all of these elements. *Eastview Healthcare, LLC v. Synertx, Inc.*, 674 S.E.2d 641, 646 (Ga. Ct. App. 2009).

To the extent that Plaintiff alleges in the Amended Complaint that the Cancellation of Debt Form 1099-C is a valid and enforceable contract between him and SPS, the Court rejects that contention. *See* Compl., Ex. B [1-2]. The face of that document indicates that it is merely a form that is being provided to the IRS, and it states only that the amount of debt discharged is $270,705.21. *See id*. Further, the code "F" on the document indicates, according to the IRS Instructions, that there has been a "discharge of indebtedness under an agreement between the creditor and the debtor to cancel the debt at less than full consideration." IRS Instructions [8-5] at 5. Thus, the form itself states that the discharge of the debt is pursuant to a specific agreement between the creditor and the debtor, and SPS has produced that specific agreement, the Loan Modification Agreement.

A plaintiff asserting a claim of breach of contract must also allege and identify a specific term or provision of the contact that the defendant violated. *See American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369-70

40

(N.D. Ga. 2006). Once the existence of a contract is established, a plaintiff may recover damages for breach of contract only if he demonstrates: (1) plaintiff's performance of the contract; (2) defendant's breach of the contract; and (3) that the breach caused the plaintiff harm. *Jones v. Central Builders Supply Co.*, 121 S.E.2d 633, 638 (Ga. 1961) (citations omitted).

In this case, based on a review of Plaintiff's allegations in the Amended Complaint and a review of the Loan Modification Agreement, which is the actual contract between Plaintiff and SPS, the Court finds that Plaintiff has failed to state a plausible claim for breach of contract against SPS. As SPS argues, the Loan Modification Agreement expressly states that a certain portion of Plaintiff's mortgage loan may be forgiven under certain circumstances, specifically, that the Plaintiff is not in default on any new payments, and that he made his full payments for three years from June 1, 2019. *See* Loan Modification Agreement. But, as SPS notes, Plaintiff fails to allege in the Amended Complaint that he met these conditions and the exhibits he attached to the Complaint indicate that he was in default. *See* Compl., Ex. E, F. For all these reasons, Plaintiff has failed to state a plausible claim against SPS for breach of contract, nor has he shown that he is entitled to a cancellation of his Loan, or a "refund of monies paid."

Accordingly, the undersigned **RECOMMENDS** that the SPS Defendants' Motion to Dismiss [8] be **GRANTED** with respect to Plaintiff's claims against SPS for "enforcement of agreement," "money damages for breach of contract," or "refund of all monies paid," and that Counts I, II, and IV of the Amended Complaint, as asserted against SPS, be **DISMISSED** for failure to state a claim.

2.      Fair Debt Collection Practices Act

In Count V of the Amended Complaint, Plaintiff's FDCPA claim, he alleges that O'Brien and SPS "are continuing to collect amounts already written off and charged off as a tax write off." Amend. Compl. [2] at ¶ 27. Plaintiff alleges that "Defendants are still reporting the Cancelled Debt on Plaintiff's Credit Reports, they continue to seek to collect a debt which has already been cancelled and is not owed, in violation of the FDCPA (Fair Debt Collection Practices Act)." *Id*. at ¶ 28. Plaintiff also alleges that the "stated Balance on Defendant SPS's Statement continues to include the Cancelled portion of the Debt, which is false and misleading and a violation of the Act." *Id*.

As discussed in connection with Plaintiff's FDCPA claim against Chase, to state a claim under the FDCPA, Plaintiff must first allege sufficient facts to state a plausible claim that SPS is a debt collector under the FDCPA, and he has failed to do so. In the Amended Complaint, Plaintiff alleges that Defendant SPS is the

"servicer for the mortgage loan in this matter." Amend. Compl. at ¶ 4. As discussed, however, it is well-established that the FDCPA applies only to "debt collectors" and not to creditors or servicers. *See* 15 U.S.C. § 1692a(6); *see also Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (M.D. Fla. April 9, 2012) (the "critical element is whether the defendant is a debt collector" as defined under the statute).

Thus, in order to state a plausible claim that a particular entity is a debt collector under the FDCPA, a plaintiff must allege sufficient facts to establish that the entity meets the definition under the statute. In other words, Plaintiff must allege a sufficient factual basis to allow a reasonable inference that the principal purpose of SPS's business is the collection of debts, or that it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *See Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1317-18 (11th Cir. 2015) ("The amended complaint . . . fails to provide any basis from which we could plausibly infer that the 'principal purpose' of Capital One's business is debt collection. . . . The amended complaint makes no factual allegations from which we could plausibly infer that Capital One regularly collects or attempts to collect debts owed or due to someone other than Capital One.").

In this case, Plaintiff fails to allege in the Amended Complaint that SPS is a debt collector as that term is defined by the FDCPA, nor does he allege any facts indicating that SPS was acting as a debt collector under the FDCPA for the purpose of attempting to collect Plaintiff's alleged debts at issue in this case. Instead, Plaintiff alleges only that SPS was the servicer of his mortgage loan.

Accordingly, the undersigned **RECOMMENDS** that the SPS Defendants' Motion to Dismiss [8] be **GRANTED** with respect to Plaintiff's FDCPA claim against SPS, and that Count V of the Amended Complaint, as asserted against SPS, be **DISMISSED** for failure to state a claim.

### 3.    Fair Credit Reporting Act

In Count VI of the Amended Complaint, Plaintiff's claim for "Violation of the FCRA," Plaintiff alleges that O'Brien and SPS "continue their wrongful acts of false reporting of Cancelled Debt on Plaintiff's Credit Report, in violation of the FCRA (Fair Credit Reporting Act), which false and misleading reporting is prohibited by the FCRA." Amend. Compl. at ¶ 31.

As discussed above in connection with Plaintiff's FCRA claim against Chase, the FCRA provides that a furnisher of credit information is only liable to a consumer in limited circumstances. In particular, while section 1681s-2(a)(1)(A) prohibits any person from "furnish[ing] any information relating to a consumer to any consumer

44

reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," that section cannot be enforced in private lawsuits brought by consumers, and rather may only be addressed in enforcement actions by the appropriate regulatory agencies. *See Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009).

Furthermore, section 1681s–2(b) of the FCRA requires furnishers to investigate and respond promptly to notice of a dispute regarding the completeness or accuracy of information provided to a consumer reporting agency. 15 U.S.C. § 1681s-2(b). While this provision of the FRCA may be enforced through a private right of action, the consumer must show that the furnisher received notice of the dispute through a consumer reporting agency and failed to investigate the dispute. *See Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008) ("The FCRA does provide a private right of action for a violation of § 1681s–2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency.").

In this case, Plaintiff does not allege in the Amended Complaint that he disputed any information to any credit reporting agency, that such agency forwarded the dispute to SPS, or that SPS thereafter failed to reasonably investigate the dispute and continued to report "false and misleading" information on Plaintiff's credit

report. Furthermore, based on the terms of the Loan Modification Agreement discussed above, Plaintiff has failed to state a plausible claim that SPS reported anything on Plaintiff's credit report that was "false and misleading." Thus, Plaintiff has failed to state a claim under the FCRA against SPS.

Accordingly, the undersigned **RECOMMENDS** that the SPS Defendants' Motion to Dismiss [8] be **GRANTED** with respect to Plaintiff's FCRA claim against SPS, and that Count VI of the Amended Complaint, as asserted against SPS, be **DISMISSED** for failure to state a claim.

### 4. Declaratory Judgment

In Count III of the Amended Complaint, Plaintiff asserts a claim for "Declaratory Relief." Amend. Compl. at ¶¶ 14-19. Plaintiff requests that the Court "issue a Final Judgment and Declaration that: the Mortgage Debt as evidenced by the Mortgage Documents and Cancellation of debt documents has been Cancelled and Discharged." *Id*. at ¶ 19.

As discussed above in connection with Plaintiff's claim for declaratory relief against Chase, under Georgia law, declaratory relief may be issued only in cases of actual controversy. *See* O.C.G.A. § 9-4-2. Federal law similarly requires that there be an "actual controversy" for a declaratory judgment to be issued. *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). Because the Court has found that Plaintiff has

failed to state a claim for breach of contract, a violation of the FDCA, or a violation of the FCRA against SPS, Plaintiff's claim for declaratory relief is also subject to dismissal because he has failed to show that SPS is liable to him on any of his substantive legal theories. *See Hull v. CitiBank, N.A.*, No. 1:13-cv-492-RWS, 2013 WL 4955584, *4 (N.D. Ga. Sept. 11, 2013) (dismissing plaintiff's claim for declaratory judgment after concluding all substantive claims failed to state a claim for relief).

Accordingly, the undersigned **RECOMMENDS** that SPS Defendants' Motion to Dismiss [8] be **GRANTED** with respect to Plaintiff's claim against SPS for declaratory relief, and that Count III of the Amended Complaint, as asserted against SPS, be **DISMISSED** for failure to state a claim.

D.     *Plaintiff's Claims against Deutsche Bank*

As set forth above, Plaintiff's claims in the Amended Complaint appear to be asserted against Chase and O'Brien (Counts I and II), or SPS and O'Brien (Counts IV, V, and VI). Plaintiff fails to allege that Deutsche Bank breached any contract with him, nor does he allege that Deutsche Bank violated the FDCPA or the FCRA. Indeed, Plaintiff barely mentions Deutsche Bank at all, except to allege that Deutsche Bank "is the owner and holder of the mortgage note in question or is the investor in that mortgage." Amend Compl. at ¶ 4.

47

To the extent that Plaintiff intended to assert any claim against Deutsche Bank, he has failed to state a plausible claim for relief against Deutsche Bank for the same reasons that he has failed to state a plausible claim for relief against SPS, who apparently was acting as the servicer of the mortgage on behalf of Deutsche Bank when it entered into the Loan Modification Agreement. Accordingly, the undersigned **RECOMMENDS** that the SPS Defendants' Motion to Dismiss [8] be **GRANTED** with respect to all of Plaintiff's claims against Deutsche Bank, and that all of Plaintiff's claims against Deutsche Bank be **DISMISSED** for failure to state a claim.

E.    *Plaintiff's Claims against O'Brien*

In the Notice of Removal [1] filed November 25, 2020, the Defendants stated that "Defendant O'Brien has not been served with either the Verified Complaint or Amended Verified Complaint or any Summons and therefore preserves all defenses related to lack of jurisdiction, insufficient process and insufficient service of process." Notice of Removal [1] at 2 n.2. Further, in the SPS Defendants' Motion to Dismiss, Defendant O'Brien has moved to dismiss the claims against him pursuant to Rules 12(b)(2), (4) and (5) for lack of personal jurisdiction, insufficient process, and insufficient service of process. *See* Defs. Br. [8-1] at 19-20.

48

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when the defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990); *see also Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1360 (11th Cir. 2008) (same). Thus, in the absence of service of process, or waiver of service by the defendant, a court ordinarily cannot exercise power over a party the complaint names as defendant. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–51 (1999); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–445 (1946) ("[S]ervice of summons is the procedure by which a court ... asserts jurisdiction over the person of the party served.").

Because a court does not have personal jurisdiction over a defendant who has neither been served nor waived service, whenever a court finds that a defendant has not been properly served under the Federal Rules of Civil Procedure, it is "improper for the district court to . . . reach[] the merits in th[e] case." *Jackson v. Warden, FCC Coleman–USP*, 259 F. App'x 181, 183 (11th Cir. 2007); *see also Pelmore v. Pinestate Mortg. Corp.*, No. 1:09-CV-2313-TWT, 2010 WL 520767, at *5 (N.D.

49

Ga. Feb. 8, 2010) (Thrash, J.) (quoting *Jackson,* 259 F. App'x at 183); *Innomed*

*Tech., Inc. v. Worldwide Med. Tech., Inc.*, 267 F. Supp. 2d 1171, 1173 (M.D. Fla.

2003) ("[a] court without personal jurisdiction is powerless to take further action")

(citing, *inter alia, Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th

Cir. 1999)).

Accordingly, the Court cannot address the SPS Defendants' arguments

regarding the legal sufficiency of Plaintiff's claims against O'Brien under Rule

12(b)(6) until it first addresses the issue of whether O'Brien has been properly served

with the summons and Complaint. If Plaintiff has failed to effect proper service of

the summons and Complaint under the Federal Rules of Civil Procedure, then the

Court lacks personal jurisdiction over Defendant O'Brien and it cannot reach his

arguments regarding the merits of Plaintiff's claims, nor dismiss Plaintiff's claims

with prejudice.[11]

---

[11] Defendant O'Brien could have chosen to waive the defenses of insufficient process, insufficient service of process, or lack of personal jurisdiction, in which case the Court could have reached the arguments that Plaintiff's claims should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. *See* Fed. R. Civ. P. 12(h)(1); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006) ("[i]t is well-settled that lack of personal jurisdiction is a waivable defect") (citations omitted); *see also In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("objections to personal jurisdiction (unlike subject matter jurisdiction) are generally waivable"); *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 901 (11th Cir. 1990) ("the insufficiency of process defense is waivable").

O'Brien seeks dismissal under Rule 12(b)(4) for insufficient process and under 12(b)(5) for insufficient service of process. "An objection to service of process 'must be specific and must point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized.'" *Binns v. City of Marietta Housing Auth.*, No. 1:07-cv-0070-RWS, 2007 WL 2746695, *2 (N.D. Ga. Sept. 18, 2007) (quoting *Photolab Corp. v. Simplex Specialty Co.*, 806 F.2d 807, 810 (8th Cir. 1986)); *see also Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008); Wright & Miller, 5B Fed. Pract. & Proc. § 1353 (3d ed.) ("The objection to insufficiency of process or its service should point out specifically in what manner the plaintiff has failed to satisfy the requirements of the service provision that was utilized."). "[T]he serving party . . . bears the burden of proof with regard to validity of service." *Anderson v. Dunbar*, 678 F. Supp. 2d 1280, 1297 (N.D. Ga. 2009) (citing *Sys. Sings Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990)); *Profit v. Americold Logistics, LLC*, No. 1:07-CV-1920-TWT, 2008 WL 1902190, at *4 (N.D. Ga. Apr. 25, 2008); *see also Adventure Outdoors, Inc. v. Bloomberg*, 519 F. Supp. 2d 1258, 1270 (N.D. Ga. 2007) ("The plaintiff bears the burden of establishing proof of service of process.").

Service of process in the federal courts is generally governed by Rule 4 of the Federal Rules of Civil Procedure, which provides, in relevant part:

> A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

Fed. R. Civ. P. 4(c)(1). Rule 4(m) provides the time limit for effecting service:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Federal Rule 4(m) provides that if a defendant is not served within 90 days after the complaint is filed, the court—on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant. Fed. R. Civ. P. 4(m). In this case, the record reflects that, although the Defendants placed Plaintiff on notice in the Notice of Removal of his failure to serve O'Brien, Plaintiff has failed to file any proof of service indicating that he ever attempted to serve O'Brien with the summons and Complaint, or Amended Complaint.[12] The SPS Defendants again

---

[12] Plaintiff has filed an "Affidavit of Service" indicating that he served a person named "Carmen Berumen" who is identified as a "corporate paralegal," on behalf of Defendant SPS on February 8, 2021. *See* Aff. of Service [19]. Plaintiff has not filed

placed Plaintiff on notice of his failure to serve O'Brien in their Motion to Dismiss [8], but Plaintiff fails to address this issue in his response. *See* Pl. Resp. [13].

As noted above, this case was removed to this Court on November 25, 2020. Once this case was removed to this Court, the Plaintiff was permitted to remedy any defects in the state court service identified by Defendants. *See* 28 U.S.C. § 1448. Furthermore, the Plaintiff had 90 days after removal, the time period provided by Rule 4(m), to serve the Defendants under federal law. *See Ritts v. Dealers Alliance Credit Corp.*, 989 F. Supp. 1475, 1479 (N.D. Ga. 1997); *see also Wallace v. Microsoft Corp.*, 596 F.3d 703, 706-07 (10th Cir. 2010) (after removal, the plaintiff had an additional 120 days to perfect service, the applicable time period under Rule 4 at that time).[13]

Thus, Plaintiff's deadline to serve O'Brien expired on or about February 24, 2021, but he has failed to provide any proof that he served O'Brien, or even made any attempt to serve O'Brien, by that deadline. Because Plaintiff has been placed on notice that he failed to serve O'Brien, and has failed to show good cause for that failure or to request additional time for service, Rule 4(m) authorizes the Court to

---

any proof of service indicating that he has made any attempts to personally serve Defendant O'Brien.

[13] Rule 4(m) was amended in 2015 to change the time period for service from 120 days to 90 days after the complaint was filed. *See* Fed. R. Civ. P. 4(m), Advisory Committee Notes.

dismiss his claims against O'Brien without prejudice for failure to serve. Accordingly, pursuant to Rule 4(m), the undersigned **RECOMMENDS** that Plaintiff's claims against O'Brien be **DISMISSED** without prejudice for failure to serve and lack of personal jurisdiction.[14]

F.    *Plaintiff's Right to Amend*

As discussed, the Court is generally required to provide a *pro se* litigant an opportunity to replead a deficient complaint before dismissal, unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) (explaining that a district court should give a *pro se* plaintiff an opportunity to amend a complaint if such amendment would not be futile).

In this case, Plaintiff has already filed one amendment to the Complaint. *See* Amend. Compl. [2]. Nevertheless, because Plaintiff has not been expressly advised

---

[14] The undersigned notes that, even if Plaintiff had shown that he served O'Brien with the summons and Complaint, his claims against O'Brien would still be subject to dismissal for the same reasons discussed above in connection with Plaintiff's claims against SPS. Moreover, Plaintiff fails to allege any facts showing that O'Brien personally took any action against him that allegedly violated any contract, or violated the FDCPA or FCRA.

of the specific deficiencies in his Complaint or Amended Complaint, the Court finds that he should be given another opportunity amend his Complaint to state a claim against Chase, SPS, or Deutsche Bank before his claims are dismissed with prejudice. Thus, the undersigned **RECOMMENDS** that Defendants' Motions to Dismiss [4][8] be **GRANTED**, but that Plaintiff be granted leave to file a second Amended Complaint within **thirty (30) days** of any order adopting this Report and Recommendation before his claims against Chase, SPS, or Deutsche Bank are dismissed.

## III.   RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Defendants' Motions to Dismiss [4][8] be **GRANTED**, and that Plaintiff's claims against Chase, SPS, and Deutsche Bank be **DISMISSED** for failure to state a claim with leave to replead within thirty (30) days.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against O'Brien be **DISMISSED** without prejudice based on Plaintiff's failure to serve him with the summons and Complaint.

**IT IS SO RECOMMENDED** this 5th day of April, 2021.

_____

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE